A01A2434. HILL et al. v. CENTENNIAL/ASHTON PROPERTIES CORPORATION et al.
(561 SE2d 853)

MILLER, Judge.

Anita Hill appeals from the trial court's order granting her former attorney's motion to foreclose a lien for attorney fees. On appeal she contends that the trial court erred by (1) finding the contract between Hill and her former attorney unambiguous, (2) failing to determine whether Hill's former attorney complied with the requirements of OCGA § 44-14-550, (3) making clearly erroneous factual findings regarding the reasonableness of the former attorney's fees, and (4) failing to give any weight to the testimony of Hill's expert witness. We discern no error and affirm.

The record reveals that Hill hired Deborah Green (now Deborah Green Gilden) to represent her in a wrongful death suit against a nursing home. Hill and Green entered into a written contingency fee agreement that provided for an alternative method of payment if either party terminated the agreement before the underlying lawsuit was settled or pursued to a final judgment:

> [Hill] shall have the right at any time to terminate the services of Deborah L. Green upon written notice. The attorney reserves the right to withdraw from any representation for any valid reason. Such termination, however, shall not relieve [Hill] of the obligation to pay the fees for services rendered and disbursements incurred prior to termination. Should such right of termination be exercised by either of us prior to the judgement or verdict or that which is paid in satisfaction of any ultimate judgement, payment shall revert to quantum meruit (at the attorney's hourly rate determined on the date of written notice of termination, for services rendered as calculated by the hour).

Green, whose practice consisted almost exclusively of nursing home cases, investigated the case, interviewed experts, pursued discovery, prepared pleadings, engaged in extensive settlement negotiations with the defendants, and attempted to schedule a formal mediation with the defendants. Before a mediation was scheduled, however, and after having worked on the case for nearly a year, Green informed Hill that she would be moving to Massachusetts to

get married. Hill hired a new attorney, and Green transferred a file to the new attorney consisting of four boxes worth of materials that she had compiled in the case. On September 7, 1999, Hill sent a letter to Green terminating her services.

Hill and her new attorney settled the case with the nursing home and sent a letter to Green dated January 11, 2000, informing her of the settlement. Just over a week later Green filed an attorney's lien. Hill objected to the lien and moved to dismiss it, claiming that Green did not comply with the notice requirements of OCGA § 44-14-550. Green filed a motion to foreclose the attorney's lien. Hill's motion to dismiss was denied on November 20, 2000, and the evidentiary hearing on the motion to foreclose the attorney's lien was set for February 16, 2001.

At the hearing on the motion to foreclose the lien, Green testified that she had spent at least 231.6 hours on Hill's case. Although she did not keep time sheets regarding the case because the case was originally taken on contingency, Green did provide detailed testimony regarding the work she had done and the files that she reviewed to account for her estimate of time spent on the case. Evidence showed that Green's hourly rate was $175 and was reasonable. An expert testified for Hill that the fees should have amounted only to $7,419. However, this expert had no experience in nursing home malpractice cases and admitted that he did not account for several of the activities for which Green spent time on the case. The trial court ruled that it would give no weight to the expert's testimony and granted Green's motion, awarding her $40,530.

1. Hill argues that her contract with Green was ambiguous because the words "quantum meruit" have a different legal meaning from that which is indicated in the contract. We find this argument to be without merit.

The construction of a contract is a question of law for the court that is subject to de novo review. See *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000). Before applying the rules of construction, a court must first decide if the contract language is ambiguous. Id. Where contract language is unambiguous, construction is unnecessary and the court simply enforces the contract according to its clear terms. *Caswell v. Anderson*, 241 Ga. App. 703 (527 SE2d 582) (2000).

We hold that the contract language here is not ambiguous. The parties were free to set the manner in which attorney fees would be calculated. See *Morrow v. Stewart*, 197 Ga. App. 689, 690 (399 SE2d 280) (1990). The agreement unambiguously states that fees would be calculated based on Green's hourly rate for the work that she had done prior to the agreement being terminated. The use of the words "quantum meruit" in the agreement does not change the fact that the

parties agreed to a clear method by which fees would be calculated. The agreement is not ambiguous, and the trial court did not err by failing to find any ambiguity.

2. Hill further contends that the trial court erred by failing to determine whether Green complied with OCGA § 44-14-550 in the filing of her attorney's lien. We disagree.

Lien laws such as the attorney's lien statute are in derogation of common law and must be strictly construed. *Ellis, Funk, Goldberg, Labovitz &c. v. Kleinberger*, 235 Ga. App. 360, 361 (1) (509 SE2d 660) (1998). "The legislature enacted a bright line rule that liens of attorneys at law *in possession of personal property* under a lien for fees pursuant to OCGA § 15-19-15 *shall be satisfied* according to Code Section 44-14-550." (Citation and punctuation omitted; emphasis in original.) *Jones v. Wellon*, 237 Ga. App. 62, 65 (514 SE2d 880) (1999). No such legislative restriction has been placed on liens on actions, judgments, or decrees for money created under OCGA § 15-19-14. If the legislature had intended for attorney liens on actions, judgments, or decrees for money to be governed by the procedures set forth under Title 44, it would have explicitly stated so, as it did for liens covered by OCGA § 15-19-15. See *Jones*, supra, 237 Ga. App. at 65. Since OCGA § 44-14-550 does not apply to this action, Hill's argument is without merit.

3. Hill claims that the trial court erred by finding that Green submitted sufficient evidence that she spent 231.6 hours working on Hill's case. We disagree.

When the trial court sits as trier of fact, we will accept the factual determinations of the trial court if there is any evidence to support them. *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693 (527 SE2d 293) (1999). As an appellate court, we do not weigh the evidence considered by the trial court. *Jennings Enterprises v. Carte*, 224 Ga. App. 538, 541 (5) (481 SE2d 541) (1997).

Green testified that she spent 231.6 hours on the case and justified it through detailed testimony about what work she did on the case and about what materials she reviewed to come up with an accurate figure regarding the time she spent. She had worked on the case for nearly a year and accumulated four boxes worth of files during her work on the case. Even though she did not have formal time sheets, there is some evidence to support the trial court's finding, and we will not disturb that finding on appeal.

4. Hill urges that the trial court erred by failing to give any weight to the testimony of her expert. The trial court was free to accept or reject the expert's testimony because the weight and credibility to be given opinion evidence are within the discretion of the trier of fact. See *Reynolds Constr. Co. v. Reynolds*, 218 Ga. App. 23, 25 (459 SE2d 612) (1995). Hill has failed to show any error here.

*Judgment affirmed. Andrews, P. J., concurs. Eldridge, J., concurs in judgment only.*

DECIDED MARCH 8, 2002.

John A. Roberts, for appellants.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, John K. Train IV, Hall, Booth, Smith & Slover, Thomas A. Graham, Warren R. Hinds,* for appellees.